**Slip Op. 24-94**

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

RISEN ENERGY, CO., LTD.,

         Plaintiff,

v.

UNITED STATES,

         Defendant,

and

AMERICAN ALLIANCE FOR SOLAR
MANUFACTURING,

         Defendant-Intervenor.

</td><td>

Before: Jane A. Restani, Judge

Court No. 23-00153

</td></tr>
</table>

## <u>OPINION</u>

[The court remands Commerce's Ninth Administrative Review for results consistent with this opinion.]

Dated: August 16, 2024

<u>Gregory S. Menegaz</u>, deKieffer & Horgan, PLLC, of Washington, DC, for the plaintiff, Risen Energy, Co., LTD. With him on the brief were <u>Alexandra H. Salzman</u>, <u>Judith L. Holdsworth</u>, and <u>Vivien J. Wang</u>.

<u>Ravi D. Soopramanien</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. With him on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Reginald T. Blades, Jr.</u>, Assistant Director. Of counsel on the brief was <u>Spencer C. Neff</u>, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Timothy C. Brightbill</u>, Wiley Rein, LLP, of Washington, DC, for the defendant-intervenor, the American Alliance for Solar Manufacturing. With him on the brief was <u>Laura El-Sabaawi</u>.

Restani, Judge: This action is a challenge to the final determination made by the United States Department of Commerce ("Commerce") in the Ninth Administrative Review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules ("solar cells"), from the People's Republic of China ("China") covering the period from January 1, 2020, to December 31, 2020.  Plaintiff Risen Energy, Co., LTD., ("Risen") requests that the court hold aspects of Commerce's final determination unsupported by substantial evidence or otherwise not in accordance with law.  The United States ("Government") asks that the court sustain Commerce's final determination.

## BACKGROUND

Commerce published a countervailing duty order on solar cells from China on December 7, 2012.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Countervailing Duty Order, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012).  In February 2022, Commerce began its Ninth Administrative Review of this countervailing duty order, covering the period of January 1, 2020, to December 31, 2020. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 6,487 (Dep't Commerce Feb. 4, 2022).  On March 22, 2022, the U.S. International Trade Administration selected Risen as one of two mandatory respondents in this review.  Dep't Commerce, Respondent Selection Memorandum, P.R. 47 (Mar. 22, 2022).

Commerce published the preliminary results on January 3, 2023, see Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Rescission of Review, in Part; 2020, 88 Fed. Reg. 1,355 (Dep't Commerce Jan. 3, 2023), along with the accompanying Preliminary Issues and Decision Memorandum, Decision Memorandum for the Preliminary Results of the Countervailing Duty Order on Crystalline Silicon Photovoltaic Cells,

Whether or Not Assembled Into Modules, from the People's Republic of China, C-570-980, POR 01/01/2020-12/31/2020 (Dep't Commerce Jan. 3, 2023) ("PDM").

Commerce published its final determination on June 29, 2023. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2020, 88 Fed. Reg. 44,108 (Dep't Commerce July 11, 2023); see also Issues and Decision Memorandum for Final Results of the Administrative Review of the Countervailing Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, C-570-980, POR 01/01/2020-12/31/2020 (Dep't Commerce June 29, 2023) ("IDM").

In the final results, Commerce included the Government of China's ("GOC") Export Buyer's Credit Program ("EBCP") in its calculation of Risen's countervailing duty ("CVD") rate. IDM at 15–16. EBCP promotes exports by providing credit at preferential interest rates to qualifying foreign purchasers of Chinese goods. See Clearon Corp. v. United States, 359 F. Supp. 3d 1344, 1347 (CIT 2019). As in prior reviews, during the Ninth Administrative Review, Risen reported that none of its customers used the EBCP during the Period of Review ("POR") and confirmed that it had never been involved in assisting customers in obtaining loans under the program; it also provided certifications of non-use from all but one of its U.S. customers attesting to this fact. See Risen, Section III Questionnaire Response at 40–41, Ex. 18, P.R. 119–124, C.R. 169–177 (May 27, 2022) ("Risen Questionnaire Response"). The GOC, however, did not provide all of the initially requested information to Commerce, stating that Commerce's questions about which partner banks were involved in the EBCP program were inapplicable because to the best of the GOC's knowledge "none of the respondents applied for, used, or benefitted from" the EBCP

program.  GOC, Response to Section II Initial Questionnaire at 147–48, P.R. 125–149, C.R. 205–242 (May 27, 2022) ("GOC Questionnaire Response").

In the IDM, Commerce explained that, based on the record before it, it was including the EBCP subsidy in its calculation of the CVD rate it applied to Risen because Risen had failed to supply it with sufficient record evidence to determine non-use and thus fill the gap caused by the GOC's noncooperation.  IDM at 15–16.  Risen then sought review of this decision at this court, arguing that Commerce's decision was not based on substantial evidence and was otherwise not in accord with the law.  Compl. at 5–6, ECF No. 8 (Sept. 11, 2023).

## JURISDICTION & STANDARD OF REVIEW

The court's jurisdiction is pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018) and 28 U.S.C. § 1581(c) (2018).  The court sustains Commerce's final redetermination results unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Risen argues that Commerce's decision to include EBCP in Risen's rate is unsupported by record evidence and is contrary to law.  Mot. for J. on the Agency Record at 3, ECF No. 30 (Jan. 31, 2024) ("Risen Br.").  Specifically, Risen argues that the record in this case does not support that a gap exists which would merit a finding that Risen used EBCP, and argues that, if such a gap exists and continues to persist despite Risen's submissions, Commerce should have notified Risen that its response was deficient and given Risen the opportunity to remedy the deficiency.  Risen Br. at 5.  Further, Risen argues that, if the record does support a gap, because Risen has supplied non-use certificates for the majority of its customers representing nearly all of its sales, Commerce should pro-rate the EBCP subsidy amount to account for the fact that, for such sales, the gap has

been filled. Risen Br. at 7, 14–15. Commerce replies that a gap continues to exist, that Risen's deficient submission was not requested by Commerce and so no notice of deficiency was merited, and that it is not Commerce's practice to pro-rate the EBCP subsidy in the way that Risen requests and so it should not pro-rate here. Resp. in Opp. to Mot. for J. on the Agency Record at 5–6, 17, ECF No. 33 (Apr. 10, 2024) ("Gov. Br."). The court addresses each of these arguments below in turn.

I.        A gap exists that may support the application of adverse facts available

Risen contends that the GOC substantially complied with Commerce's requests for information in this case, and that therefore no gap in the record exists for Risen to fill. Risen Br. at 10. Risen further argues that, if such a gap exists, it has substantially filled that gap. Id. at 8. Government asserts that because the GOC has not supplied Commerce with the list of partner banks that it requested, a gap exists that supports the application of adverse facts available. Gov. Br. at 8–10. Further, Government argues that, because Risen has not supplied non-use certificates for all of its customers, it has not filled that gap. Id. at 15–16.

If "necessary information is not available on the record" or if a responding party "withholds information" requested by Commerce, Commerce shall "use the facts otherwise available in reaching the applicable determination." 19 U.S.C § 1677e(a) (2018). Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" when information is missing from the record because a party "has failed to cooperate by not acting to the best of its ability to comply with a request for information" from Commerce. Id. § 1677e(b). Commerce determines when a gap exists and when to apply adverse facts available ("AFA"), though it must be reasonable in making that determination. See id. § 1677e(b)(1); see also Guizhou Tyre Co. v. United States, 523 F. Supp. 3d 1312, 1361 (CIT 2021). In order for an

application of AFA to be reasonable, Commerce must: (1) define the gap in the record by identifying what necessary information has been withheld; (2) explain the reason that the withheld information is necessary; and (3) show that only the withheld information could fill the gap. See Guizhou Tyre, 523 F. Supp. 3d at 1361.

In its attempt to verify non-use of EBCP, Commerce found that the GOC did not provide the information necessary to analyze usage of the EBCP because, while the GOC did provide some information in answer to Commerce's questions,[1] the GOC refused to provide Commerce with a list of partner banks participating in the EBCP. PDM at 45. Commerce determined that it could not verify non-usage of the EBCP without this list because it would not know which banks to look for in a customer's books that could indicate an EBCP loan. Id. Thus, Commerce determined that the GOC's noncooperation created a gap in the record. Id.

The court has previously found that this explanation is reasonable. Cooper (Kunshan) Tire Co. v. United States, 539 F. Supp. 3d 1316, 1328–1334 (CIT 2021). It is still reasonable here. Commerce has supported that a gap exists.

II.      Risen has not filled the gap

Risen argues that the combination of non-use certificates and the sales contract for the non-cooperative customer shows non-use of the EBCP program. Risen Br. at 13. Commerce has responded that the sales contract is not a sufficient substitute for a non-use certificate, and that it

---

[1] Specifically, the GOC supplied screenshots of what it described as a search of the Export-Import Bank's database for the customers' names. GOC Questionnaire Response at Ex. F-4. The search did not turn up any results, and the GOC indicated that this was evidence of non-use. GOC Questionnaire Response at 147–48. This is certainly stronger evidence than silence; but, given the unverifiable nature of this submission, Commerce is reasonable in seeking the list of banks to better enable it to verify whether EBCP has been used. See Cooper (Kunshan) Tire Co. v. United States, 539 F. Supp. 3d 1316, 1330 (CIT 2021); see also RZBC Grp. Shareholding Co. v. United States, Slip Op. 16-64, 2016 WL 3880773, at *4 (CIT 2016) (holding that because screenshots can be fabricated they are not sufficient evidence of non-use).

cannot verify non-use of EBCP without the full composite of non-use certificates.  Gov. Br. at 9, 11.

Where a respondent is able to fill the gap caused by the noncooperation of another party, AFA may become inappropriate.  See Risen Energy Co. v. United States, 665 F. Supp. 3d 1335, 1342 (CIT 2023) ("Risen II").  Parties have previously filled the gap by supplying Commerce with certificates from all customers indicating that each customer did not use the program.  Id.  Commerce has then proceeded to verify the non-use certificates and, on the basis of that verification, has removed the EBCP subsidy.[2]  Non-use certificates represent verifiable statements from U.S. customers to the U.S. government that are generally "punishable under 18 U.S.C. § 1001 if . . . a customer is lying."  Risen II, 665 F. Supp. 3d at 1343.

Risen supplied Commerce with non-use certificates for all but one of its customers.  Risen Questionnaire Response at 40.  Risen claims that this customer declined to supply the certificate due to an unrelated business dispute.[3]  Risen Br. at 6.  Risen argues that because the contract with the non-complying customer does not contain any mention of the EBCP program the contract itself should serve as sufficient evidence of non-use.  Id.  Commerce found that this contract did not

---

[2] This is the process that another mandatory respondent followed in this administrative review, and Commerce removed the EBCP subsidy for that respondent.  See IDM at 8, 18.

[3] Although Commerce declines to explicitly explain the non-use demonstration requirement and argues that the respondents have produced these certificates spontaneously so as to make a 19 U.S.C. § 1677m(d) notice inapplicable, see Gov. Br. at 6, Commerce's practice has nonetheless long reflected that non-use certificates are required as at least one step in the process of demonstrating non-use.  Changzhou Trina Solar Energy Co. v. United States, 255 F. Supp. 3d 1312, 1317 (CIT 2017) (discussing the use of non-use certificates in the 2013 POR).  As this requirement is becoming extremely predictable, if Risen is having difficulty getting compliance because it is relying on customers' good will, Risen Reply Br. at 6, perhaps it might consider contracting for this need.  Commerce, however, declines to make this requirement explicit and has failed to argue in this case that Risen, itself, did not do all that it should have done to comply with Commerce's requirement.  Thus, this issue is not before the court here.

provide sufficient evidence of non-use and, because it did not have a full compilation of non-use certificates from Risen's customers, Commerce declined to attempt to verify any of the non-use certificates. IDM at 15–16. Instead, Commerce determined that the gap was not filled. Id. at 14.

As an initial matter, the court finds Commerce's determination that the contract was not an adequate substitute for a non-use certificate to be reasonable. Risen has presented no record evidence to demonstrate that its theory that the absence of mention of EBCP from a contract in fact demonstrates that EBCP was not used. Further, as previously noted by this court, the non-use certifications are significant because they are statements made by U.S. customers to the U.S. government, and are thus "punishable under 18 U.S.C. § 1001 if . . . a customer is lying." Risen II, 665 F. Supp. 3d at 1343. Without the non-use certificate, no statement that the customer did not use the program exists for Commerce to verify. Further, given the customer's non-compliance, it would not be reasonable to require Commerce to further engage a customer that has already, at this extremely early stage, declined to participate. Risen has failed to fill the entire gap in this case.

III.   Risen was entitled to notice of its submission's deficiency, but because there is no evidence that notice would have made any difference in this case the court does not order Commerce to reopen the record here

Section 1677m(d) requires that if Commerce "determines that a response to a request for information . . . does not comply with the request, [Commerce] shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy." 19 U.S.C. § 1677m(d). The court has previously held that § 1677m(d) does not require Commerce to ask respondents for supplemental information when the GOC's response is deficient because § 1677m(d) only provides the deficient party with the

opportunity to remedy, not affected third-parties.  See Cooper (Kunshan) Tire Co. v. United States, 610 F. Supp. 3d 1287, 1317 (CIT 2022).  Nevertheless, the court has also held that once Commerce has issued a questionnaire to third-parties, and a third-party has responded attempting to demonstrate non-use, if the third-party's response is deficient due to incompleteness, the third-party is entitled to notice and an opportunity to remedy that deficiency.  Risen Energy Co. v. United States, 658 F. Supp. 3d 1364, 1371 (CIT 2023).  Here, Commerce should have informed Risen that its incomplete collection of non-use certificates was a deficient response.  Nonetheless, unlike in Risen II, here Risen has given no indication that it would be able to remedy this deficiency and has failed to show any ability to remedy it at any subsequent stage of litigation.  Thus, as Commerce is reasonable in finding Risen's contract submission deficient, it would be futile to ask Commerce to inform Risen of a deficiency of which Risen is already well aware and which Risen has given no indication that it will be able to remedy.  Accordingly, the court will not require Commerce to reopen the record.  Commerce has discretion to accept or reject any new evidence offered on remand.

IV.     Commerce must account for the portion of non-use certificates that Risen has provided to Commerce

Risen argues that, if it has not completely filled the gap, Commerce should either remove EBCP from the CVD rate calculation because Risen has nonetheless substantially filled the gap by accounting for the majority of its sales through non-use certificates or it should pro-rate the subsidy to account for the proportion of its customers who turned in non-use certificates.  Risen Br. at 14–15.  Government replies a gap persists and so AFA remains appropriate.  Gov. Br. at 6, 17.  Government further argues that to pro-rate the CVD rate where most, but not all, of a party's customers have cooperated runs counter to its practice and mistakes the nature of the gap to be

filled. Gov. Br. at 17. Government asserts that the because the gap is created by the GOC's noncooperation, not Risen's, as long as some gap remains, the application of AFA is still appropriate, as the statute authorizes AFA in response to a gap created by the noncooperation of an interested party. Gov. Br. at 16–17. According to Government, filling the gap, or failing to fill the gap, is a zero-sum game; it cannot be partially done. See id.

Use of AFA is only appropriate where information is otherwise not available on the record, and should not be used "simply to punish" a non-cooperative party. Guizhou Tyre Co., Ltd. v. United States, 348 F. Supp. 3d 1261, 1270 (CIT 2018) (citations omitted). Commerce must consider all information placed on the record. GPX Int'l Tire Corp. v. United States, 37 CIT 19, 58–59, 893 F. Supp. 2d 1296, 1332 (2013), aff'd, 780 F.3d 1136 (Fed. Cir. 2015) ("When Commerce has access to information on the record to fill in the gaps created by the lack of cooperation by the government, as opposed to the exporter/producer, however, it is expected to consider such evidence."). Where information has been submitted on the record that may fill the gap such that it makes the use of AFA inappropriate, Commerce must show that the information submitted is not reasonably verifiable before it applies AFA. Risen II, 665 F. Supp. 3d at 1342; see also Changzhou Trina Solar Energy Co. v. United States, 352 F. Supp. 3d 1316, 1327 (CIT 2018) (citing 19 U.S.C. § 1677m(e)). In order to find that information is not verifiable, Commerce must at least attempt to complete verification. Risen II, 665 F. Supp. 3d at 1342; Guizhou Tyre Co. v. United States, 415 F. Supp. 3d 1402, 1405 (CIT 2019) ("The adverse use of facts otherwise available can only be used to fill gaps necessary to complete the factual record. . . . But until these reasons are grounded in facts supported by the record—that is, until the Department actually attempts verification and adequately confronts these (purportedly) insurmountable challenges, there is little for the Department to hang its hat on when it 'continues to find a "gap" in the

record.'") (emphasis omitted) (citations omitted).  Where verification is only able to confirm non-use from some customers, but not all, pro-rating the EBCP subsidy to account for the proportion of non-use that is verifiable may be reasonable and appropriate.  Dalian Meisen Woodworking Co. v. United States, Slip Op. 24-83, 2024 WL 3580510 (CIT 2024).

Risen has supplied Commerce with non-use certifications from all of its customers but one.  Risen Questionnaire Response at 40.  That one customer accounts for less than two percent of Risen's total sales.  Id.  Commerce, however, has declined to attempt verification of any portion of the non-use certificates that Risen has turned in, because it does not have non-use certificates from all of Risen's customers.  IDM at 15–16.  Commerce asserts that attempting verification without the full cooperation of all of Risen's customers would be futile, as it clearly could not result in a finding of one-hundred percent non-use.  Id. at 15–16; Gov. Br. at 16.

Commerce may reasonably apply AFA to Risen as regards the sales of the customer that did not supply a non-use certificate,[4] but the approach it has taken here, applying AFA to Risen as regards all sales from all customers, regardless of whether or not that customer has turned in a certificate of non-use, is not reasonable.  Commerce is correct that the gap in this case is created by the GOC's noncooperation, and that the question at issue is whether Risen has been able to fill that gap.  But by applying AFA to all of Risen's sales, based on Risen's inability to account for a sliver of them, Commerce has mistaken the nature of AFA in the EBCP context.  AFA, in CVD cases, is only appropriate so long as a gap in the record exists because the point of AFA is to allow Commerce to make a decision where a record is otherwise incomplete.  See 19 U.S.C. § 1677e(b); GPX, 37 CIT at 58–59, 893 F. Supp. 2d at 1332.  AFA does not exist to punish non-cooperative parties.  Guizhou Tyre, 348 F. Supp. 3d at 1270.  So, while it is true that the GOC's noncooperation

---

[4] See supra Section I.

continues to create the portion of the gap in the record that Risen is unable to fill, Commerce cannot ignore that Risen has managed to fill substantial portions of the record such that for almost all of its sales there may no longer be a gap.[5]  The statute does not permit Commerce to substitute an adverse presumption that is contrary to the actual facts on the record where actual facts exist.

The record before the court currently contains the statements of most of Risen's U.S. customers, claiming that none have used the EBCP program and that all are willing to participate in verification proceedings.  While Commerce is not required to verify those statements—as verification is discretionary[6]—it cannot treat the statements as unverifiable without at least attempting to verify them.  See Risen II, 665 F. Supp. 3d at 1342.  If Commerce chooses to attempt verification, verification attempts might result in the discovery of information that counters these certifications, or it may result in an absence of record information that fails to support the attestations of non-use, either of which might reasonably lead Commerce to discount the certificates and thus might support AFA.  See 19 U.S.C. § 1677m(e).  At this stage, however, Commerce has declined to attempt any verification of these submissions.  Without attempting verification, Commerce may not reasonably determine that the non-use of the customers that turned in non-use certificates is unverifiable.  See Risen II, 665 F. Supp. 3d at 1342.  If Commerce wishes to apply AFA against Risen for the sales of any customers that have supplied non-use certificates, it must attempt to verify the information that Risen has submitted.

Commerce argues that verification in this case would be futile, since in order to remove AFA Commerce must be certain that Risen received no benefit from EBCP.  Def.'s Resps. to the

---

[5] Even in the EAPA context, where whether an adverse inference may be used without regard to whether a gap exists, if other information on the record "so undermines the determination that it is rendered arbitrary, the determination cannot stand."  CEK Grp. LLC v. United States, 633 F. Supp. 3d 1369, 1379 n.7 (CIT 2023).

[6] See, e.g., IDM at 14 n.46.

Court's Written Questions at 3–4, ECF No. 40 (Aug. 1, 2024). As Risen was unable to supply complete non-use certificates, Commerce knows that it will not be able to verify complete non-use, and so attempting verification in this case is futile. Id. This explanation is particularly unreasonable given Commerce's own explanation of the EBCP program.[7] Commerce has explained the relevance of the gap caused by the GOC's refusal to supply it with the list of partner banks by emphasizing its need to check each importer's individual financing. Gov. Br. at 15. EBCP, Commerce has explained, is a program that each importer might engage with on an individual level, and so as a result Commerce must have information on which banks are used by the GOC and, in the alternative, must individually verify each importer's financing to determine that no importer was financed by EBCP. Id. Any subsidy Risen might or might not have received through the program is therefore tied to its customers' financing, and thus, Risen itself can only be subsidized by any individual customer proportionate to its sales to that customer. Customers accounting for over 98 percent of Risen's sales have placed non-use certifications on the record. Risen Br. at 14–15. Therefore, even if EBCP funded 100 percent of the non-cooperating party's sales, 100 percent of two percent of sales does not support an application of a CVD rate that includes EBCP to all of Risen's product sales. The math does not add up. Based upon Commerce's

---

[7] In supplemental briefing, Government and Defendant-Intervenor suggest that it is necessary to know whether a single sale benefited from EBCP in order to know that no benefit was conferred by subsidization, so as to calculate a final overall CVD rate. Def.'s Resps. to the Court's Written Questions at 3–4, ECF No. 40 (Aug. 1, 2024); Def.-Intervenor Answers to Oral Argument Questions at 1–2, ECF No. 41 (Aug. 1, 2024). This suggests an accuracy in calculating a countervailing duty rate that does not reflect what is actually occurring. As no party has ever been shown to use EBCP there is no subsidy rate calculated for it. See IDM at 18–19. A rate for another program is used and that program may or may not be very similar to EBCP. Id. In any case if Commerce concludes something like 98 percent of sales did not benefit from EBCP then a rate that indicates all sales did benefit would not be reflective of a proper CVD rate.

own explanation of how EBCP works, even if the non-compliant customer did use EBCP, at most substantial evidence only supports that two percent of Risen's overall sales were subsidized.[8]

AFA exists to complete an incomplete record. The record before the court currently contains the statements of most of Risen's U.S. customers, claiming that none have used the EBCP program and all are willing to participate in verification proceedings. Therefore, as the record stands, customers accounting for 98 percent of Risen's sales have given every indication that they are able to reasonably fill the gap. At this stage, AFA is not appropriate as applied to the 98 percent of sales for which the cooperative customers account. Commerce must therefore either attempt verification, to determine more accurately what proportion of the sales Risen is able to account for, or it must remove at least the portion of the EBCP rate attributable to the customers demonstrating non-use from the calculation of Risen's overall CVD rate. Should Commerce choose to attempt verification, the court does not intend, at this stage, to limit Commerce from utilizing a particular method to pro-rate or any rate or rates that are otherwise reflective of the record evidence. Commerce must grapple with all evidence on the record; how it chooses to account for that evidence is discretionary, so long as its method is reasonable.

## CONCLUSION

For the foregoing reasons, the court remands to Commerce for verification of the non-use certificates or for a determination otherwise consistent with this opinion on the issues. The

---

[8] In supplemental filings, Commerce argues that pro-rating is hypothetically inappropriate because in order to pro-rate it would need to have definite information as to the benefit Risen received from EBCP. Def.'s Resps. to the Court's Written Questions at 3–4. The information on the record, however, does make clear that, assuming the non-use certificates are verifiable, no benefit in this case could be greater than two percent of Risen's sales. Thus, for 98 percent of sales, the benefit is knowable. How Commerce wishes to account for whatever benefit was conferred by the remaining two percent is for remand.

government remand shall be issued within 90 days hereof.   Comments may be filed 30 days thereafter and any response 10 days thereafter.

            /s/ Jane A. Restani
            Jane A. Restani. Judge

Dated:    August 16, 2024
        New York, New York